# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 19-**1750** -M
Information associated with the cellular telephone )
assigned numbers (267) 236-3076 and (215) 939-6482, )
that is stored at premised controlled by T-Mobile )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of ___New Jersey___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1951 | conspiracy to commit robbery which interferes with interstate commerce |
| 18 U.S.C. 924(c) | use of a firearm in furtherance of a crime of violence |

The application is based on these facts:

See attached Affidavit which also incorporates Attachments A and B.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Iman Ibrahim, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/18/2019

*Judge's signature*

City and state: Philadelphia, Pennsylvania          Hon. Linda K. Caracappa, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBERS (267) 236-3076 and (215) 939-6482, STORED AT PREMISES CONTROLLED BY T-MOBILE | Case No. 19-1750 M |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Iman Ibrahim, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I submit this affidavit in support of an application for a search warrant for information associated with certain cellular telephones assigned call numbers (267) 236-3076 and (215) 939-6482 ("the SUBJECT PHONES"), stored at premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany New Jersey. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. Since November 2015, I have worked as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). Prior to my employment with ATF, I worked for Immigration and Customs Enforcement for six years. I am a graduate of the Criminal Investigator Training Program and the Special Agent Basic

Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. I work with a specialized enforcement group known as the ATF Violent Crimes Task Force, whose primary mission is to investigate those individuals and groups engaged in the commission of federal firearms and narcotics laws. During my tenure as an agent, I have participated in and personally conducted several investigations involving violations of these laws.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 1951 (conspiracy to commit robbery which interferes with interstate commerce), and Title 18, United States Code, Section 924(c) (possession of a firearm in furtherance of a crime of violence) have been committed by Malcolm TAYLOR and Michael WHITEHURST. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes as further described in Attachment B.

(continued onto next page)

## INTRODUCTION

5. I am investigating robberies of cell phone stores that occurred in late 2017 in Philadelphia, Pennsylvania. Four of the known robberies occurred at the below date and place:

| PLACE OF CRIME | DATE OF CRIME |
| --- | --- |
| Boost Mobile Store<br>5942 Torresdale Avenue, Philadelphia PA | November 15, 2017 |
| Mobile Solutions<br>6526 Castor Avenue, Philadelphia PA | November 17, 2017 |
| T-Mobile<br>180 West Girard Avenue, Philadelphia, PA | November 24, 2017 |
| Sprint<br>9181 Roosevelt Boulevard, Philadelphia, PA | December 4, 2017 |

6. Based on my investigation, as described herein, the crimes were committed by two black males, carrying weapons, and each male appeared to wear similar clothing during each of the robberies. As further described in this affidavit, there is probable cause to believe that all four robberies were committed by Malcolm TAYLOR and Michael WHITEHURST, in violation of Title 18, United States Code, Section 1951 (conspiracy to commit robbery which interferes with interstate commerce), and Title 18, United States Code, Section 924(c) (possession of a firearm in furtherance of a crime of violence). On September 5, 2019, a grand jury in the Eastern District of Pennsylvania indicted TAYLOR and WHITEHURST for four counts of robbery which interferes with interstate commerce, in violation of 18 U.S.C. § 1951(a), and one count of carrying and using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1). The indictment is a result of the four robberies listed in paragraph 5 and described further herein.

3

7.  This search warrant requests cell site records and location data for cell phone numbers reported to be used by a Cooperating Source ("CS") during the investigative time period of November 1, 2017 to December 31, 2017. As described herein, the CS was in the business of buying new cell phones from others, to include TAYLOR, and used both of the SUBJECT PHONES to communicate with buyers and conduct business in the fall of 2017.

## PROBABLE CAUSE

8.  On November 15, 2017, at approximately 11:10 a.m., Philadelphia Police Department (PPD) officers responded to a Boost Mobile store, a business which is engaged in and affecting interstate commerce, located at 5942 Torresdale Avenue in Philadelphia, Pennsylvania, to investigate an armed robbery. Upon arrival, officers interviewed a store employee working the counter during the time of the robbery, hereafter referred to as Victim #1, who told officers that two black males armed with guns, had just robbed the store of money and demanded cell phones. Victim #1 described the first male (believed to be Malcolm TAYLOR) as having a dark complexion, approximately 5'7" to 5'8" tall, who had hair styled in dreadlocks, and was armed with a silver revolver. Victim #1 stated the second male (believed to be Michael WHITEHURST) had a medium-brown complexion, wore a ski mask over his face and carried a plastic bag containing a black assault-type rifle.

9.  During the interview, Victim #1 stated he/she recognized the first male who was holding the silver revolver because he had entered the Boost Mobile store a few days prior to the robbery and asked about telephones. PPD detectives reviewed video surveillance days prior to the robbery and identified a male meeting the description of the robber with the silver revolver. On November 17, 2017, Victim #1 was shown a still photograph of a black male, with a dark

4

complexion, light facial hair, and hair styled in dreadlocks, taken from the video surveillance inside the Boost Mobile store on November 12, 2017. Victim #1 identified the man in the photograph as the one who committed the robbery by threatening him/her with the silver revolver.

10. I reviewed the video surveillance from November 12, 2017 and the still photograph taken from it and identified by Victim #1. I compared the November 12, 2017 video against arrest photographs, driver's license photographs and various photographs and videos from social media of Malcolm TAYLOR. Based on my investigation, I know TAYLOR is a black male, with a dark complexion, approximately 5'7" and, in the fall of 2017, wore his hair in dreadlocks. Based on my comparisons, I believe that the person identified by Victim #1 is TAYLOR.

11. On November 17, 2017, at approximately 10:30 a.m., two men attempted to commit an armed robbery of a Mobile Solutions Store, a business that is engaged in and affecting interstate commerce, located at 6526 Castor Avenue. The Mobile Solutions Store employees described the robbers as two black males, in their twenties, approximately 5'5", wearing gray hooded sweatshirts, gloves, blue jeans and carrying weapons. One male (believed to be TAYLOR) brandished a silver revolver, jumped over the counter and took an employee's cell phone when she attempted to call the police. The male then attempted to take the phone of the second employee, but that victim ran to the backroom. The other male (believed to be WHITEHURST) carried a black semi-automatic handgun and a Kicks USA shopping bag, and wore a grey hooded sweatshirt, blue jeans and a frayed khaki-colored cap. Both males fled the store, only taking with them the phone stolen from an employee.

12. On November 24, 2017, at approximately 8:30 a.m., two black men robbed the T-Mobile store, a business which is engaged in and affecting interstate commerce, located at 180 West Girard Avenue in Philadelphia, Pennsylvania, of 18 cell phones and $130 USC. The T-Mobile employees described one robber (believed to be Michael WHITEHURST) as a black male, 5'8", thin build, wearing a gray hooded sweatshirt and dark jeans, and was armed with a black, Uzi-style firearm sticking out of a Kicks USA plastic shopping bag. The second male (believed to be Malcolm TAYLOR) as a black male, 5'9", medium build with dark complexion. The employees stated both males wore half ski masks and entered the store shortly after opening.

13. On December 4, 2017, at approximately 10:41 a.m., two black males robbed the Sprint Store, a business which is engaged in and affecting interstate commerce, located at 9181 Roosevelt Boulevard of 59 cell phones and iPads. The two store employees described the first male (believed to be TAYLOR) as being in his 20s, 5'7 – 5'8, 160 lbs, brown complexion, thin build, wearing a gray hooded Nike sweatshirt, and a black ski mask. The second male (believed to be WHITEHURST) was described as a male, early 20s, wearing a tan cap, grey hooded sweatshirt, black gloves, black ski mask, and armed with a large, black Uzi-style firearm sticking out of a Kicks USA plastic sneaker bag.

14. On December 29, 2017, Philadelphia Police arrested TAYLOR, WHITEHURST, and Rafik HAYES immediately after they robbed the Verizon Store located at 300 Spring Garden Street in Philadelphia. All three were subsequently detained[1] and later pled guilty to offenses related to the robbery.

---

[1] TAYLOR was released on home confinement for a short time period pending trial, but then returned to Philadelphia custody.

15. On December 4, 2017, law enforcement recovered three of the cell phones which had been stolen during the November 24, 2017 T-Mobile robbery. The phones were possessed by CS. CS is currently being prosecuted in an unrelated case in the Middle District of Pennsylvania for Frauds and Swindles, Fraud and Identification Documents, Conspiracy to Commit Mail Fraud, and Conspiracy to Defraud the United States. CS has cooperated and provided information, which has proven to be truthful and reliable to other law enforcement and ATF. CS stated he/she used the SUBJECT PHONES to conduct business during the fall of 2017. CS voluntarily provided consent to law enforcement to review the SUBJECT PHONES.

16. CS stated on November 24, 2017, at approximately 10:09 a.m., that is approximately one and half hours after the T-Mobile robbery, the CS received a text message on SUBJECT PHONE number (267) 236-3076 from a male, which stated, "Give me a call I have phones." CS received another message from this individual with a photograph showing what appeared to be unopened cellular telephone boxes inside a Kicks USA shopping bag. CS previously purchased new cell phones from this same individual and recognized the seller's voice when he called to arrange the sale. CS knew this male by the name of "X." CS stated he/she met "X" at Kaminski's Sport Bar and Grill located at 1424 Brace Road in Cherry Hill, NJ a few hours later. CS stated the seller, who had dreadlocks, exited a vehicle and entered CS' vehicle carrying a Kicks USA shopping bag containing cellular telephones resembling the ones seen in the photograph in the text message sent to CS. CS stated there appeared to be two other males who remained in the vehicle. CS stated he/she then paid the seller cash for approximately nine or ten brand new cellular telephones in boxes.

17. On November 20, 2018, investigators showed CS an unmarked photograph of Malcolm TAYLOR and CS identified TAYLOR as the man who sold him/her the T-Mobile

telephones on November 24, 2017. CS advised he/she bought cell phones from TAYLOR both before and after November 24, 2017 and approximately six to ten times in total.

18. A review of one of the CS' telephones showed text messages, telephone calls and photograph sent by TAYLOR to the CS on November 24, 2017. I have also reviewed the surveillance footage from the November 24, 2017 T-Mobile robbery and determined that the photograph received by the CS showing a Kick USA bag with unopened cell phone boxes is the same type of Kicks USA bag held by one of the robbers during the November 24, 2017 robbery.

19. ATF agents identified the subscriber for the telephone number TAYLOR used to contact CS on November 24, 2017. I identified and interviewed the subscriber ("Witness-1") numerous times. I also corroborated the information provided by Witness-1 through different means including by obtaining Witness-1's cell site records.

20. I interviewed Witness-1 regarding the November 24, 2017 text messages sent to and from Witness-1's telephone to CS regarding cell phones for sale. Witness-1 stated he/she spent time with TAYLOR from the summer of 2017 through December 2017. Witness-1 stated that on November 24, 2017, Witness-1 was at TAYLOR's house in Philadelphia when TAYLOR and another male, who Witness-1 knows by the name of "Face," returned back to the house between 8:30 a.m. and 9:00 a.m. Witness-1 stated TAYLOR had a lot of brand new cell phones. Witness-1 stated he/she knew that TAYLOR and "Face" had just robbed a cell phone store and further stated that the two robbed cell phone stores that fall 2017, to include both before and after November 24, 2017.

21. Witness-1 was shown two unmarked photographs and he/she identified Malcolm TAYLOR and Michael WHITEHURST as the two males he/she was referring to. Witness-1 stated TAYLOR asked to use his/her telephone on November 24, 2017 and forwarded a picture

of the bag of cellular telephones because TAYLOR's telephone was off that day. Witness-1 stated TAYLOR and the buyer exchanged text messages regarding the sale of the telephones. Witness-1 stated he/she went to New Jersey with TAYLOR and WHITEHURST to sell the telephones to a white male the same day and then went to the mall. Witness-1 stated he/she believed TAYLOR made over nine thousand dollars.

22. CS stated to investigators he/she met with TAYLOR at Kaminsky's Bar in New Jersey on the day of the November 24, 2017 T-Mobile robbery to purchase phones. Witness-1 stated he/she allowed TAYLOR to use his/her phone to arrange the sale of the stolen phones with CS. Witness-1 stated he/she accompanied TAYLOR and WHITEHURST to New Jersey to sell the stolen phones. Cell site data from Witness-1 and WHITEHURST's phones place both phones in the vicinity of Kaminsky's Bar in New Jersey a few hours after the robbery on November 24, 2017.

23. This affidavit is seeking the cell site data of CS' telephones in order to ascertain his/her location in November and December 2017, that is, during the time period of the indicated conduct. This will provide investigators with corroboration of Witness-1 and CS as well as corroborating the cell site data from Witness-1 and WHITEHURST.

24. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio

9

signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

25. Based on my training and experience, I know that T-Mobile can collect cell-site data about the SUBJECT PHONES and retain that cell-site data for a period of two years. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

26. Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONES' user or users and may assist in the identification of co-conspirators and/or evidence of additional robbery victims.

10

## AUTHORIZATION REQUEST

27. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

28. I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because my investigation as described in this affidavit provides probable cause to believe that WHITEHURST and TAYLOR robbed multiple stores during the fall of 2017 and CS engaged in buying telephones from TAYLOR during that period, the information requested to be disclosed for the time period identified in Attachment B (November 1, 2017 through December 30, 2017) will likely contain evidence of the crimes under investigation. Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Iman Ibrahim
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on October 18th, 2019

HONORABLE LINDA K. CARACAPPA
UNITED STATES MAGISTRATE JUDGE

11

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call numbers (267) 236-3076 and (215) 939-6482 ("the SUBJECT PHONES") that are stored at premises controlled by T-Mobile ("the Provider"), headquartered at 7 Sylvan Way, Parsippany, New Jersey.

## ATTACHMENT B

### Items to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of November 1, 2017 to December 30, 2017:

a. The following information about the customers or subscribers of the SUBJECT PHONES:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

2

      vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, including historical cell site information, for the applicable time period of September 1, 2017 through December 30, 2017.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 18, United States Code, Section 1951 (conspiracy to commit robbery which interferes with interstate commerce) and Title 18, United States Code, Section 924(c) (possession of a firearm in furtherance of a crime of violence) involving Malcolm TAYLOR and Michael WHITEHURST during the period of November 1, 2017 to December 30, 2017.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

3